[Cite as *State v. Phelan*, 2017-Ohio-7025.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# GEAUGA COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2016-G-0061** |
| JULIE A. PHELAN, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from the Chardon Municipal Court, Case No. 2015 CRB 00493.

Judgment: Reversed and remanded.

*Dennis M. Coyne*, City of Chardon Prosecutor, 111 Water Street, Chardon, OH 44024 (For Plaintiff-Appellee).

*Dennis J. Ibold*, Petersen & Ibold, Inc., 401 South Street, Bldg. 1-A, Chardon, OH 44024-1495 (For Defendant-Appellant).

THOMAS R. WRIGHT, J.

{¶1} Appellant, Julie A. Phelan, appeals her convictions for domestic violence and disorderly conduct. She argues that the convictions are against the manifest weight of the evidence and contests two evidentiary rulings. We reverse and remand for a new trial.

{¶2} The charges stem from a physical altercation between appellant and her husband, Brian J. Phelan. On the day of the incident, June 6, 2015, the couple had

been married for nearly four years and had one child, a daughter, approximately one year old.

{¶3} On the morning before the altercation, the couple and their daughter went to a dog show in a neighboring county. Upon arriving home in the early afternoon, Brian and his daughter went to his parents so that they could visit with them and relatives who had flown in from another state. According to Brian, appellant did not go with them because she did not care for his family. According to appellant, Brian did not ask her to go.

{¶4} Brian did not return home until late that evening. At some point, appellant sent Brian a text message stating that she was going to bed, that she did not want to be disturbed, and that he should spent the night at his parents. Brian's responsive text informed that he was already on his way home. Appellant still went on to bed, locking both the door from the garage to the basement and the door to their bedroom.

{¶5} Upon arriving home at approximately 11:15 p.m., Brian put his daughter to bed in a separate bedroom. After unlocking the door to the couple's bedroom, he got undressed and got into bed beside appellant. Immediately, the couple engaged in a physical and verbal altercation that lasted for approximately four hours.

{¶6} The initial altercation was confined to the bedroom. According to Brian, when he laid down, appellant quickly rolled over on top of him and began to choke him. Eventually, he was able to push her off his chest and sit up on the edge of the bed. While still lying on the bed, appellant then kicked him, hitting his shoulder and neck with her shin. After that, Brian tried to calm appellant by hugging her and asking her to go back to bed. However, she continued to fight in his grip and was soon able to free

2

herself.

{¶7} According to appellant, Brian initiated the altercation by wrapping his arms around her in the bed and then rolling on top of her. After telling Brian to let her go, she began to resist by moving her arms and hips. When she was able to get away, she ran toward the bedroom door, but he blocked her path, grabbed her, and pushed/threw her to the hardwood floor. Brian again laid down directly on top of her, and she continued to flail against him until he released her. She then got dressed and went to the garage.

{¶8} According to both appellant and Brian, after the initial confrontation in the bedroom, she tried to leave home in her car. However, he got dressed, followed her to the garage, and stood in such a manner that she could not shut the front door on the driver's side. Each time appellant tried to put the key into the ignition or start the car, he grabbed the key and threw it on the car's roof. She would then retrieve the key, get back into the car, and the process would begin again.

{¶9} Eventually, appellant exited her car and began to walk down the driveway. On at least one occasion, Brian followed her, grabbed her in his arms, and carried her back to the garage. According to appellant, Brian grabbed her with such force that she thought he would crack her ribs. According to Brian, he only hugged her and again was trying to convince her to come back in and go to bed.

{¶10} At some point, Brian did not follow appellant when she tried to walk down the driveway. This occurred during the early morning hours of June 7, 2015. According to appellant, she walked a short distance, but then hid under a tree because she was fearful that Brian might be following her. After approximately one hour, appellant returned home.

3

{¶11} Once inside the garage, Brian continued to stop appellant whenever she tried to leave in her car. Ultimately, appellant gave up and laid down in the car's back seat. However, when Brian left the garage to use the bathroom, she started the car and drove away. She eventually parked at a local supermarket, where she fell asleep from exhaustion at approximately 4:00 a.m.

{¶12} After appellant left, Brian placed their daughter in his vehicle and drove to the South Russell Police Department, where he gave a statement alleging that appellant had assaulted him. He also showed the officers injuries he sustained to his right cheek, his neck/shoulders, and his right arm. Furthermore, he showed them that his shirt had ripped during their struggles in the driveway.

{¶13} When appellant called Brian on his cell phone while he was at the police department, he told her that the officers wanted to speak to her about the incident. After she arrived, she gave the officers a separate statement in which she accused Brian of assaulting her. Due to perceived inconsistencies in appellant's statement, the officers concluded that Brian's version was more credible. Hence, she was charged with one count of domestic violence, a first-degree misdemeanor under R.C. 2919.25(A), and one count of disorderly conduct, a minor misdemeanor under R.C. 2917.11(A)(1).

{¶14} Within five days of the incident, appellant brought a divorce action against Brian. During that proceeding, a guardian ad litem was appointed to produce a report as to best interests of the child. When the bench trial in the criminal case proceeded, appellant attempted to call the guardian ad litem to testify regarding a statement Brian had made to the guardian. After directly questioning the guardian concerning his role in the divorce proceeding, the trial court ruled that the alleged statement was inadmissible

4

because it was a part of the guardian's work product.

{¶15} Appellant also sought to introduce the testimony of her grandmother, who indicated that Brian made a statement to her during a private conversation regarding his relationship with appellant. After the trial court ruled the proposed testimony inadmissible, the defense proffered that according to the grandmother, Brian told her that his brother informed him that appellant would not be able to obtain custody of their daughter if she were ordered to serve jail time.

{¶16} In addition to Brian's testimony, the state presented the testimony of the two police officers who investigated the incident. In response, appellant testified on her own behalf and also called her cousin to testify. At the close of the evidence, the trial court found appellant guilty on both charges. After a presentencing report was filed, the court sentenced her to 180 days in jail, but suspended the term and placed her on one-year probation. The court also imposed a $100 fine.

{¶17} In appealing her conviction, appellant asserts three assignments of error for review:

{¶18} "[1.] As a matter of law, the trial court erred in failing to allow [the guardian ad litem] to testify based on the work product doctrine.

{¶19} "[2.] As a matter of law, the trial court erred in failing to allow [appellant's] grandmother to testify based on hearsay.

{¶20} "[3.] As a matter of law, the trial court erred in finding that the State proved beyond a reasonable doubt that Julie Phelan committed Domestic Violence and Disorderly Conduct."

{¶21} Under her first assignment, appellant challenges the trial court's decision

5

excluding the testimony of the guardian ad litem on the grounds that it is shielded under the work product doctrine. She contends that since the guardian was not representing her, Brian, or their child, the doctrine does not apply.

{¶22} After the trial court rendered its ruling regarding the admissibility of the proposed testimony, no proffer was made as to what the guardian ad litem would have stated if he had testified. As a result, no determination can be made as to whether the ruling was prejudicial. Appellant has waived the right to contest the evidentiary ruling on appeal. Evid.R. 103(A)(2). *State v. Grubb*, 28 Ohio St.3d 199, 203, 503 N.E.2d 142 (1986). Thus, appellant's first assignment lacks merit.

{¶23} Appellant's next assignment addresses the trial court's exclusion of the grandmother's testimony. As to her proposed testimony, a proffer was included in the record. Specifically, the grandmother was prepared to state that during a private conversation with Brian, he told her that according to his brother, appellant would not be allowed to see or have custody of the child if appellant were jailed. Appellant argues the testimony is admissible because it was not offered for the truth of the matter asserted. She claims the testimony was admissible to show Brian's motive.

{¶24} Evid.R. 801(C) defines hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Hence, "if a statement is not offered for the truth of the matter asserted, it is not prohibited by the hearsay rule and will be admissible, subject to the standards governing relevancy and undue prejudice." *State v. Hall*, 5th Dist. Fairfield No. 05 CA 35, 2006-Ohio-2160, ¶27, citing *State v. LaMar*, 95 Ohio St.3d 181,196, 2002-Ohio-2128, 767 N.E.2d 166. Under this rule, a declarant's out-of-court statement

6

is admissible if it is offered to provide a reason for the person's subsequent actions.

{¶25} The mere fact that Brian would make such a statement is evidence that he has reason to misrepresent appellant's role in the altercation as it would serve his interest to have sole custody of his daughter. To this extent, the proposed testimony was not offered for the truth of the matter asserted, but instead to establish bias or motive. *See State v. Irizarry*, 8th Dist Cuyahoga Nos. 93353 and 93354, 2010-Ohio-5117, ¶13. Thus, the testimony was admissible, and the trial court should have allowed the grandmother to testify and considered her testimony in determining guilt. The second assignment is well-taken. Moreover, although couched in terms of sufficiency, the substance of appellant's third assignment of error is that the convictions are against the manifest weight of the evidence. Accordingly, this court's ruling on the second assignment renders the third assignment moot.

{¶26} The judgment of the Chardon Municipal Court is reversed, and the case is hereby remanded for additional proceedings consistent with this opinion.

CYNTHIA WESTCOTT RICE, P.J., concurs,

COLLEEN MARY O'TOOLE, J., concurs with a Concurring Opinion.

_____

COLLEEN MARY O'TOOLE, J., concurs with a Concurring Opinion.

{¶27} I concur with the majority's well-reasoned decision. I write separately simply to emphasize that on the record before us, Brian could be found both guilty of domestic violence, and disorderly conduct. Indeed, this case presents a textbook

7

scenario of domestic violence in which the police, the prosecutor, and the trial court failed to recognize the essential elements. It is clear that further training is mandated for police, prosecutors, and trial judges in this area.

{¶28} Accepting Julie's version of events, Brian instigated the fight. As a cohabitant, in her own home, she was not required to retreat, but had every right to defend herself with force. *State v. Maine*, 4th Dist. Washington No. 04CA46, 2005-Ohio-3742, ¶12.

{¶29} However, even accepting Brian's version of events, I believe he can be held liable. Both parties agree he repeatedly blocked Julie from trying to leave in her car. R.C. 2919.25(C), "Domestic violence," provides: "No person, by threat of force, shall knowingly cause a family or household member to believe that the offender will cause imminent physical harm to the family or household member." Brian's actions fit this description.

{¶30} R.C. 2917.11, "Disorderly conduct," provides, in pertinent part:

{¶31} "(A) No person shall recklessly cause inconvenience, annoyance, or alarm to another by doing any of the following:

{¶32} "(4) Hindering or preventing the movement of persons * * * to, from, within, or upon * * * private property, so as to interfere with the rights of others, and by any act that serves no lawful and reasonable purpose of the offender[.]"

{¶33} Brian had no lawful purpose in preventing Julie from driving away.

{¶34} It is clear from the record that Julie was a victim of domestic violence and disorderly conduct, facts which the police, prosecutor, and trial court failed to recognize.

{¶35} I respectfully concur.

8